UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| TERRYON GOLLIDAY, | ) |
|     Plaintiff, | ) ) ) |
|     v. | )  No. 2:24-cv-00433-JPH-MG ) |
| WELLS Sgt., <br> MASSEY Sgt., <br> STEPHANIE EDWARDSON Sgt., <br> JOHNSON C.O., <br> LOUDER C.O., <br> TROUTMAN C.O., | ) ) ) ) ) ) ) |
|     Defendants. | ) |

**ORDER DISMISSING COMPLAINT, DIRECTING FILING OF AMENDED COMPLAINT, AND ADDRESSING PENDING MOTIONS**

  Plaintiff Terryon Golliday is a prisoner currently incarcerated at Westville Correctional Facility; he was in Putnamville Correctional Facility when he filed this civil action. The complaint alleges that officers at the Vigo County Jail (the Jail) stole trade secrets of his when he was a pretrial detainee there.[1] Because the plaintiff is a "prisoner," this Court must screen the complaint before service on the defendants. 28 U.S.C. § 1915A(a), (c). The Court also addresses Mr. Golliday's motion to reconsider the requirement that he pay an initial partial filing fee for this action, his three motions for counsel, and two other motions.

---

[1] On the same date this action was filed, the Court also received a "Motion for Acceptance of Plaintiff's 1983 Civil Action Claim." Dkt. 2. Mr. Golliday later clarified that this was intended to be a complaint for a separate cause of action, so the Court directed the opening of another case based on that document, dkts. 12 and 14, which is now proceeding under cause number 2:24-cv-00583-JMS-MJD.

1

## I. Motion to Reconsider Initial Partial Filing Fee

Mr. Golliday's motion to reconsider the imposition of an initial partial filing fee in this case is **GRANTED**. Dkt. [18]. The Court concludes that Plaintiff has no assets and no means to pay even an initial partial filing fee. *See* 28 U.S.C. § 1915(b)(4) ("In no event shall a prisoner be prohibited from bringing a civil action . . . for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."). Although Plaintiff is excused from *pre*-paying the full filing fee, he still must pay the three hundred and fifty ($350.00) filing fee pursuant to the statutory formula set forth in 28 U.S.C. § 1915(b)(2) when able. *See* 28 U.S.C. § 1915(b)(1) ("the prisoner shall be required to pay the full amount of a filing fee."). The Court will enter a separate order to collect the filing fee for this action from Plaintiff's custodian.

## II. Screening of Complaint

### A. Screening Standard

When screening a complaint, the Court must dismiss any portion that is frivolous or malicious, fails to state a claim for relief, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). To determine whether the complaint states a claim, the Court applies the same standard as when addressing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Schillinger v. Kiley*, 954 F.3d 990, 993 (7th Cir. 2020). Under that standard, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court construes *pro se* complaints liberally and holds them to a "less stringent standard than pleadings drafted by lawyers." *Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017).

### B. The Complaint

The complaint names as defendants: (1) Sgt. Wells; (2) Sgt. Massey; (3) Sgt. Stephanie Edwardson; (4) Correctional Officer Louder; (5) Correctional Officer Johnson; (6) Correctional Officer Troutman; (7) Correctional Officer Volpatti.

The complaint alleges that on September 9, 2022, while Mr. Golliday was a pretrial detainee at the Jail, Officers Johnson, Louder, Troutman, and Volpatti moved Mr. Golliday to a segregation cell based on a conduct report written by Officer Volpatti. While searching Mr. Golliday's property as part of the move, Officer Johnson seized a dictionary that Mr. Golliday alleges contained trade secrets. He describes the secrets as "written ideas of material, for use of certain prefabricated aftermarket parts to be one of a kind production parts . . . ." Dkt. 1 at 3. Mr. Golliday received some of his property back but not the dictionary containing the alleged trade secrets. He wrote grievances to Sgt. Edwardson about the missing dictionary, but she did not provide any relief. Mr. Golliday also alleges that Sgt. Wells deliberately stole and destroyed the trade secrets and also 200 pages of legal documents that Mr. Golliday accumulated between July 2020 and September 2023.

Mr. Golliday's complaint seeks damages under the federal Defend Trade Secrets Act, 18 U.S.C. § 1831 et seq. He also asserts that Defendants violated the federal Hobbs Act and engaged in a criminal conspiracy against him. He also cites a number of other federal statutes, and alleges he was retaliated against, and was subjected to intentional infliction of emotional distress, and was deprived of the ability to file grievances.

### C. Dismissal of Complaint

Applying the screening standard to the facts alleged in the complaint, the complaint must be dismissed for failure to state a claim upon which relief may be granted.

#### 1. Trade Secrets Claims

First, regarding the alleged theft of trade secrets, 18 U.S.C. § 1836(b)(2)(B) authorizes suits for damages for the misappropriation of trade secrets. To the extent Mr. Golliday attempts to assert such a claim, the complaint falls short in the following respects.[2]

Mr. Golliday's allegations do not support a reasonable inference that any property seized from him contained "trade secrets" within the meaning of the statute. Broadly, the term applies to "financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes,

---

[2] The Court notes that this is the second lawsuit Mr. Golliday has filed alleging Vigo County law enforcement officers stole his trade secrets, though the allegations in the previous case were that arresting officers had stolen a phone containing the trade secrets. *Golliday v. Lewis, et al.*, 2:22-cv-00398-JRS-MKK (S.D. Ind.).

4

procedures, programs, or codes." 18 U.S.C. § 1839(3). Such information only becomes a trade secret, however, if its owner "has taken reasonable measures to keep such information secret." 18 U.S.C. § 1839(3)(A). Moreover, the information must derive "independent economic value" from not being generally known or readily ascertainable by others. 18 U.S.C. § 1839(3)(B). Mr. Golliday has provided only vague and conclusory allegations about the information he characterizes as trade secrets. Nothing in the complaint supports a reasonable inference that whatever information was in Mr. Golliday's dictionary had actual or potential economic value, that it was information not generally known or ascertainable by others, that he took reasonable measures to keep the information secret, or that the information's value increased by virtue of being kept secret.

Also, damages are only available to compensate the owner for the actual loss he suffered from the misappropriation or for any unjust enrichment the misappropriator gained. 18 U.S.C. § 1836(b)(3)(B). Without any information about the nature of Mr. Golliday's "trade secrets" or how he might have profited from them, or about how the person who allegedly stole the secrets has been enriched by them, the Court cannot reasonably infer that a qualifying loss or unjust enrichment has taken place.

### 2. Property Loss Generally

To the extent Mr. Golliday seeks damages for the confiscation or loss of his property, he has not presented a plausible claim for relief. The Fourteenth Amendment prohibits the deprivation of property without due process, but "an adequate state remedy for a deprivation for a deprivation of property provides all

5

the due process that a plaintiff suing state officers for such deprivation is entitled to." *See DKCLM, Ltd. v. Cnty. of Milwaukee*, 794 F.3d 713, 716 (7th Cir. 2015). Mr. Golliday may bring claims regarding the confiscation or loss of his personal property in state court. *See also Wynn v. Southward*, 251 F.3d 588, 592–593 (7th Cir. 2001) ("The district court properly dismissed Wynn's Fourteenth Amendment claims for deprivation or destruction of personal property . . . . Wynn has an adequate post-deprivation remedy in the Indiana Tort Claims Act, and no more process was due.").

### 3. Retaliation Claims

Next, to prevail on a First Amendment retaliation claim, Mr. Golliday "must ultimately show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009).

"We emphasize, however, that not every claim of retaliation by a disciplined prisoner, who either has had contact with, or has filed a lawsuit against prison officials, will state a cause of action for retaliatory treatment. Rather, the prisoner must allege a chronology of events from which retaliation may plausibly be inferred." *Cain v. Lane*, 857 F.2d 1139, 1143 n.6 (7th Cir. 1988). *See also Santiago v. Anderson*, 496 F. App'x 630, 633 (7th Cir. 2012) (stating that inmate's claim "that every ill befalling him must be retaliatory because everyone knows him to be litigious and a frequent correspondent with the grievance officer—falls

6

short of stating a claim even under notice pleading"); *Benson v. Cady*, 761 F.2d 335, 342 (7th Cir. 1985) (noting that "alleging merely the ultimate fact of retaliation is insufficient").

Mr. Golliday's complaint seems to blame anything that happened to him at the Jail that he did not like upon alleged retaliation by multiple Defendants (in addition to them engaging in a conspiracy against him). But his allegations are too vague and conclusory to state a claim. The mere fact that Mr. Golliday was a frequent grievance filer and was also sometimes subjected to things he did not like is not by itself enough to plead a retaliation claim—specifically, the element of Defendants' conduct being motivated by a wish to retaliate against Mr. Golliday. In other words, there is not a "chronology of events" from which an inference of retaliation might plausibly be inferred.

### 4. Hobbs Act/Criminal Conspiracy Claims

Mr. Golliday seems to invoke federal criminal statutes in support of his claims. But only the United States may commence federal criminal charges, and a private individual has no right to compel such a prosecution. *See Leeke v. Timmerman*, 454 U.S. 83 (1981) (holding that inmates lacked standing to force issuance of arrest warrants of correctional officers for beatings); *Ragsdale v. Turnock*, 941 F.2d 501, 509 (7th Cir. 1991) (private persons generally have no right to enforce criminal statutes or to sue under them unless the statute also creates a private right of action). (Posner, J., concurring), *cert. denied*, 502 U.S. 1035 (1992).

7

### 5. Grievances

Inmates do not have a freestanding right under federal law to an administrative remedy process. The Seventh Circuit has "specifically denounc[ed] a Fourteenth Amendment substantive due process right to an inmate grievance procedure." *Grieveson v. Anderson*, 538 F.3d 763, 772 (7th Cir. 2008). "Prison grievance procedures are not mandated by the First Amendment and do not by their very existence create interests protected by the Due Process Clause." *Owens v. Hinsley*, 635 F.3d 950, 953-54 (7th Cir. 2011) (citing *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007)).

As explained in *Antonelli v. Sheahan*, 81 F.3d 1422, 1430-31 (7th Cir. 1996), "any right to a grievance procedure is a procedural right, not a substantive one. Accordingly, a state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause." *Id.* at 1430-31 (internal citations omitted). Because Mr. Golliday had no expectation of a particular outcome of his grievances or complaints there is no viable claim that can be vindicated through a federal lawsuit. *Juriss v. McGowan*, 957 F.2d 345, 349 n.1 (7th Cir. 1992).

### 6. Other Claims

Although Mr. Golliday mentions many other federal statutes in his complaint, he fails to explain how any of the other statutes are relevant to his claims, nor is their relevance apparent to the Court. That leaves only an attempted claim for intentional infliction of emotional distress. But, that would be a state law claim. Because the Court has been unable to identify any

actionable federal claims in this case, the Court would lack jurisdiction over a standalone state-law claim—there is no diversity of citizenship between Mr. Golliday and the Defendants, and supplemental jurisdiction would be unavailable.[3] *See* 42 U.S.C. § 1367(c)(3); *Hagans v. Lavine*, 415 U.S. 528, 536-37 (1974); *In re African-Am. Slave Descendants Litig.*, 471 F.3d 754, 757-58 (7th Cir. 2006).

Because the Court has been unable to identify a viable claim for relief against any particular defendant, the complaint is subject to dismissal.

### D. Opportunity to File an Amended Complaint

The dismissal of the complaint will not in this instance lead to the dismissal of the action at present. "The usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). In the interest of justice, the court will allow plaintiff to amend his complaint if, after reviewing this court's order, he believes that he can state a viable claim for relief, consistent with the allegations he has already made. *See Tate v. SCR Med. Transp.*, 809 F.3d 343, 346 (7th Cir. 2015) ("We've often said that before dismissing a case under 28 U.S.C. § 1915(e)(2)(B)(ii) a judge should give the litigant, especially a pro se litigant, an opportunity to amend his complaint."); *Luevano v. Wal-Mart*, 722 F.3d 1014 (7th Cir. 2013).

---

[3] The Court offers no opinion on whether Mr. Golliday has adequately stated a claim for intentional infliction of emotional distress.

The plaintiff shall have **through June 6, 2025, to file an amended complaint**.

The amended complaint must (a) contain a short and plain statement of the claim showing that the plaintiff is entitled to relief, which is sufficient to provide the defendant with fair notice of the claim and its basis; (b) include a demand for the relief sought; and (c) identify what injury he claims to have suffered and what persons are responsible for each such injury. In organizing his complaint, the plaintiff may benefit from utilizing the Court's complaint form. The **clerk is directed** to include a copy of the prisoner civil rights complaint form along with the plaintiff's copy of this Order, which he should use if he files an amended complaint. *See* Local Rule 8-1 (requiring pro se plaintiffs to use the clerk-provided form for claims under 42 U.S.C. § 1983).

Any amended complaint should have the proper case number, 2:24-cv-00433-JPH-MG, and the words "Amended Complaint" on the first page. The amended complaint will completely replace the original. *See Beal v. Beller*, 847 F.3d 897, 901 (7th Cir. 2017) ("For pleading purposes, once an amended complaint is filed, the original complaint drops out of the picture."). Therefore, it must set out every defendant, claim, and factual allegation the plaintiff wishes to pursue in this action.

If the plaintiff files an amended complaint, it will be screened pursuant to 28 U.S.C. § 1915A(b). If no amended complaint is filed, this action will be dismissed without further notice or opportunity to show cause.

### III. Motions for Counsel

Mr. Golliday has filed three motions for recruitment of counsel. Dkts. 9, 11, 19. Litigants in federal civil cases do not have a constitutional or statutory right to court-appointed counsel. *Walker v. Price*, 900 F.3d 933, 938 (7th Cir. 2018). Instead, 28 U.S.C. § 1915(e)(1) gives courts the authority to "request" counsel. *Mallard v. United States District Court*, 490 U.S. 296, 300 (1989). As a practical matter, there are not enough lawyers willing and qualified to accept a pro bono assignment in every pro se case. *See Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014) ("Whether to recruit an attorney is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.").

"'When confronted with a request under § 1915(e)(1) for pro bono counsel, the district court is to make the following inquiries: (1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" *Eagan v. Dempsey*, 987 F.3d 667, 682 (7th Cir. 2021) (quoting *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007)). These two questions "must guide" the Court's determination whether to attempt to recruit counsel. *Id.* These questions require an individualized assessment of the plaintiff, the claims, and the stage of litigation. *See Pruitt*, 503 F.3d at 655-56. The Seventh Circuit has specifically declined to find a presumptive right to counsel in some categories of cases. *McCaa v Hamilton*, 893 F.3d 1027, 1037 (7th Cir. 2018) (Hamilton, J., concurring); *Walker*, 900 F.3d at 939.

The Court first notes that none of Mr. Golliday's motions for counsel are on the form that the Court requires plaintiffs to use when requesting counsel. The use of the form is mandated in part because it lists a number of conditions for recruitment of counsel to which a plaintiff must agree before the Court will attempt to recruit counsel. Additionally, the Court notes that Mr. Golliday essentially threatens the Court with criminal prosecution for also becoming part of the Defendants' conspiracy against him if it denies his motions for counsel. Those threats are entirely baseless, and they do nothing to support his requests for counsel.

The Court finds that Mr. Golliday has made a reasonable effort to recruit counsel on his own before seeking the Court's assistance. He should continue his efforts to find counsel.

"The second inquiry requires consideration of both the factual and legal complexity of the plaintiff's claims and the competence of the plaintiff to litigate those claims himself." *Eagan*, 987 F.3d at 682 (citing *Pruitt*, 503 F.3d at 655). "Specifically, courts should consider 'whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it to the judge or jury himself.'" *Id.* (quoting *Pruitt*, 503 F.3d at 655). "This assessment of the plaintiff's apparent competence extends beyond the trial stage of proceedings; it must include 'the tasks that normally attend litigation: evidence gathering, preparing and responding to motions and other court filings, and trial.'" *Id.* (quoting *Pruitt*, 503 F.3d at 655).

Mr. Golliday's filings with the court thus far have indicated an ability to understand and follow basic legal procedures. He clearly can write and understand English at a high level. Furthermore, this case is at a very early stage, with the Court just now screening Mr. Golliday's original complaint. The Seventh Circuit has found that "until the defendants respond to the complaint, the plaintiff's need for assistance of that counsel . . . cannot be gauged." *Kadamovas v. Stevens*, 706 F.3d 843, 845 (7th Cir. 2013); *see also Mapes v. Indiana*, 932 F.3d 968, 971 (7th Cir. 2019) (acknowledging "the difficulty in accurately evaluating the need for counsel in the early stages of pro se litigation"). That statement from *Kadamovas* is not a "bright-line rule," but in this case, Mr. Golliday has not shown a need for counsel to assist him at this time to "investigate and flesh out any claim that may exist." *Mapes*, 932 F.3d at 971-72.

For these reasons, Mr. Golliday's motions for assistance recruiting counsel are **denied without prejudice**. Dkts. [9], [11], [19]. The Court will remain alert to changes in circumstances that may warrant reconsideration of the motion, such as a settlement conference or trial. Also, the **clerk is directed** to attach a form motion for assistance recruiting counsel to Mr. Golliday's copy of this Order.

### IV. Motions to Correct Errors and for Court Assistance

Mr. Golliday's "motion to correct errors" notes that Officer Volpatti is not currently listed as a defendant on the docket, despite being named in his complaint. The motion, dkt. [22], is **GRANTED** to the extent the **clerk is directed** to add Correctional Officer Volpatti as a defendant on the docket.

13

Mr. Golliday's other pending motion for assistance, requesting "acceptance of certificate of service," is **DENIED**. Dkt. [23]. It requests service of process on the named defendants in Mr. Golliday's complaint. But, as discussed, the Court is required to first screen the complaint before any Defendants may be served, and the Court at this time has not identified any viable claims that warrant service of any Defendant.

## V. Conclusion

Mr. Golliday's motion to reconsider imposition of an initial partial filing fee is **GRANTED**. Dkt. [18]. No initial partial filing fee is due at this time.

Mr. Golliday has through **June 6, 2025**, to file an amended complaint as discussed in part II of this Order. Failure to do so will result in dismissal of this action without further notice or opportunity to show cause. The **clerk is directed** to attach a pro se prisoner complaint form to Mr. Golliday's copy of this Order.

Mr. Golliday's motions for counsel are **DENIED without prejudice**. Dkts. [9], [11], [19]. The **clerk is directed** to attach a form motion for assistance recruiting counsel to Mr. Golliday's copy of this Order.

Mr. Golliday's motion to correct error at dkt. [22] is **GRANTED**. The **clerk is directed** to add Correctional Officer Volpatti as a defendant on the docket. Mr. Golliday's motion for assistance, dkt. [23], is **DENIED**.

**SO ORDERED.**

Date: 5/7/2025

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

TERRYON GOLLIDAY
295044
WESTVILLE – CF
WESTVILLE CORRECTIONAL FACILITY
Inmate Mail/Parcels
5501 South 1100 West
WESTVILLE, IN 46391